# COURT OF APPEALS OF VIRGINIA

Record No. 1231-25-3

JAMES PERNELL MCDANIEL
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Malveaux, Athey and Frucci

Argued at Lexington, Virginia

Opinion Issued May 5, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Catherine French Zagurskie, Chief Appellate Counsel (Kelsey Bulger, Deputy Appellate Counsel; Virginia Indigent Defense Commission, on briefs), for appellant.

Celtia R. Rokebrand, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE STEVEN C. FRUCCI

Following a bench trial, the circuit court convicted James Pernell McDaniel of one count of reckless driving, one count of felony hit and run involving personal injury, and one count of felony hit and run involving damage to attended property. The circuit court sentenced McDaniel to 10 years and 12 months of imprisonment, with 8 years and 26 months suspended. On appeal, McDaniel contends that, since there was a single accident, the circuit court erred in denying his motion to strike one of the hit and run charges. He also contends the circuit court abused its

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

discretion in imposing an active sentence of 10 months for the offenses. For the following reasons, this Court reverses the judgment of the circuit court and remands for a new trial and sentencing.[2]

BACKGROUND[3]

I. The collision

On the morning of June 30, 2023, McDaniel was driving a dump truck on Route 501 toward the intersection with Route 122 in Lynchburg. The traffic ahead of McDaniel was stopped at the intersection for a red traffic light. The dump truck did not slow or stop, plowing through several vehicles that were in two turning lanes stopped at the intersection. Dragging another vehicle from the crash with it, the dump truck came to rest in the parking lot of a former car dealership. After exiting the dump truck, McDaniel pulled on the door and tried to enter the building of the dealership.

Hunter Simms was with coworkers from Enterprise Rent-A-Car in a vehicle near the intersection and witnessed the crash. Simms's vehicle stopped in the car dealership parking lot not far from the dump truck. McDaniel entered Simms's vehicle, claiming that he also worked for Enterprise. At the insistence of Simms and his coworkers, McDaniel got out of the car.

Meanwhile, Lynchburg Police Officer Bauserman had arrived on the scene of the crash. Officer Bauserman saw McDaniel beside the vehicle with the Enterprise employees. In response to the officer's question, McDaniel acknowledged that he was the driver of the dump truck.

---

[2] McDaniel does not challenge his reckless driving conviction. As such, that conviction is not before this Court. However, he does assign error to his sentence, including for the reckless driving conviction.

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Officer Bauserman asked where McDaniel was going, and he said that he was trying to get in the car to go home. Officer Bauserman said that McDaniel was not free to leave and asked for his driver's license, registration, and insurance information. The officer also said that McDaniel's work supervisor needed to come to the scene. McDaniel entered the driver's seat of the dump truck. He pushed his foot down on the clutch pedal as though preparing to start the truck. The officer repeatedly insisted that McDaniel was not free to leave and that he was under arrest. Eventually, after McDaniel ignored the officer's orders to exit the truck, Officer Bauserman pulled McDaniel from the vehicle to prevent him from leaving. There was obvious damage to the front end of the dump truck that would have immobilized it.

When assessed by a paramedic at the scene, McDaniel's vital signs were normal, and he had no visible injuries. McDaniel was calm and cooperative and did not request medical treatment. At no time after the crash did McDaniel approach any of the other drivers or passengers involved to provide his identifying information or to ascertain their condition.

II. Damage from the collision

Just before the crash, Joan Knaus's van was stopped in the line of traffic to turn left at the intersection of Routes 501 and 122. Jane Gomez was driving the van, and Knaus was the front seat passenger. The dump truck struck a vehicle behind the van, pushing that vehicle into the van. After the wreck, Knaus was hospitalized for 12 days with numerous fractured bones, lacerations to her head, and a concussion. The impact threw Gomez into the backseat of the van, and her entire body was bruised afterward.

In addition to Knaus's van, the other vehicles damaged in the wreck were Joshua Belisle's Chevy Silverado truck, Leigha Moore's Nissan Rogue, Bobby Stonebreaker's Ford F150 truck, a box truck owned by Wooldridge Heating and Air, and Sara Porco's Honda CRV.

Every vehicle that was involved in the wreck sustained more than $1,000 in damage as a result of the incident, and several vehicles were totaled.

III.  The charges and the motions to strike

McDaniel was charged with hit and run under Code § 46.2-894 involving personal injury to Knaus; five charges of hit and run involving damage to the attended property of Stonebreaker, Porco, Moore, Belisle, and Wooldridge Heating and Air; and with reckless driving.

In a motion to strike at the conclusion of the Commonwealth's evidence, McDaniel contended that there was only one accident, so there could be only one potential conviction for hit and run.  He argued that under Virginia case law, to constitute separate accidents under the hit and run statute, there must have been separate causes as well as a sufficient temporal interval between them.  He also contended that the chaotic scene and his nearly immediate arrest by the police prevented him from rendering aid or providing identifying information to the other drivers at the crash scene.

The circuit court agreed with McDaniel that the evidence did not demonstrate a separate cause or attenuating interval for the five charges of hit and run with attended property damage and that only one of those charges could survive the motion to strike.  But the court noted that those offenses had separate elements from the charge of hit and run involving personal injury. After asking the prosecutor which of the five hit and run with property damage charges it elected to have proceed, the Commonwealth moved to amend one of those indictments to include the names of all five property owners—Stonebreaker, Porco, Moore, Belisle, and Wooldridge Heating and Air.  The circuit court asked if McDaniel had any objection to this procedure, and he raised none.  The circuit court then granted the motion to amend the indictment involving Stonebreaker to also list the other property damage victims and struck the other four counts of hit and run involving property damage.  The circuit court then overruled the motion to strike the

remaining two hit and run charges, explaining that they had "different elements and different requirements placed upon drivers of vehicles."

McDaniel did not introduce evidence. In closing, McDaniel reiterated his claim that the situation after the crash was confusing and chaotic and that his behavior indicated that he did not appreciate what had happened or the severity of the accident. He also asserted that he was arrested shortly after the collision and eventually gave the required information to the police. Asserting that the evidence was insufficient to prove hit and run, McDaniel asserted that he "did not have the knowledge to actually comprehend what was going on" and that knowledge was required to prove his guilt.

The circuit court found that McDaniel failed to take the actions required by law after the accident for the two counts of hit and run and that he recklessly operated the dump truck. Accordingly, the circuit court convicted McDaniel for hit and run with personal injury to Knaus, hit and run damaging multiple attended vehicles in excess of $1,000, and reckless driving.

IV. The sentencing hearing

At sentencing, Moore testified that not only was her car totaled in the collision but that she also suffered concussion and jaw pain, as well as mental trauma from the incident. Moore experienced lingering physical and mental effects that interfered with her work and parenting. Stonebreaker also sustained physical injuries in the crash. Knaus explained the extensive rehabilitation that was required for her injuries and that she had to depend on others to take care of her large family. She continued to have pain, headaches, and physical limitations, as well as impaired vision and hearing.

Defense counsel argued that McDaniel was a 56-year-old father and grandfather with a strong family support system. McDaniel was driving the dump truck for his employer at the time of the offense but took a different job afterward to comply with the terms of his bond. McDaniel

also had been working on a farm for more income. He had been diagnosed with "small vessel disease." McDaniel had worked as a commercial truck driver for an extensive period of time and had only two prior convictions on his driving record. Defense counsel asked the circuit court to consider McDaniel's mitigating circumstances and sentence him to time already served.

The circuit court sentenced McDaniel to 10 years and 12 months of imprisonment, with 8 years and 26 months suspended.[4] McDaniel appeals.

ANALYSIS

On appeal, McDaniel contends the circuit court erred in convicting him of two counts of hit and run under Code § 46.2-894 when the evidence was insufficient to prove more than one accident. Notably, the circuit court agreed with McDaniel that there was only one accident.[5] The circuit court then found that a charge of hit and run causing property damage has distinct elements from hit and run involving personal injury, so it reasoned that McDaniel could be convicted on both such charges from one accident.[6]

However, under Code § 46.2-894:

> The driver of any vehicle involved in *an accident* in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of *the accident* as possible without obstructing traffic . . . and

---

[4] Specifically, McDaniel was simultaneously sentenced on all three convictions. He was sentenced to 5 years of incarceration, with 4 years and 10 months suspended, for the hit and run involving personal injury conviction, 5 years of incarceration, with 4 years and 10 months suspended, for the hit and run with damage to attended property conviction, and 12 months of incarceration, with 6 months suspended, for the reckless driving conviction.

[5] On appeal, the Commonwealth also agrees that there was one accident.

[6] "[W]hen an appeal presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a statute, [appellate courts] must construe statutory language to answer the question." *Smith v. Commonwealth*, 282 Va. 449, 453-54 (2011) This "presents a pure question of law which [this Court] consider[s] *de novo* on appeal." *Hannon v. Commonwealth*, 68 Va. App. 87, 92 (2017). McDaniel also challenges his sentence. This Court reviews the trial court's sentence for an abuse of discretion. *Laney v. Commonwealth*, 76 Va. App. 155, 165-166 (2022).

report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property. The driver shall also render reasonable assistance to any person injured in *such accident*, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

(Emphases added). "[I]n construing Code § 46.2-894, the Supreme Court [of Virginia] has held" that "'[t]he extent of the property damaged or the number of people injured or killed does not constitute an element of the offense,'" rather "'[i]t is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense.'" *Tooke v. Commonwealth*, 47 Va. App. 759, 765-66 (2006) (quoting *James v. Commonwealth*, 178 Va. 28, 37 (1941)). Therefore, as stated by this Court in *Tooke*, "[t]he gravamen of the offense under the statute is a single accident, regardless of the number of persons injured or the extent of the damage. Nowhere does the statute mention that failure to stop and assist each person involved in a single accident is a separate crime."[7] *Id.* at 765. As both parties agree that there was a single accident "as a matter of law, the evidence proved a single offense." *Id.* at 766.

---

[7] While *Tooke* involved an appeal of a single accident resulting in two convictions of hit and run with attended property damage, its analysis was not limited to the type of hit and run convictions involved and applies equally to facts presented in this case.

> The extent of the property damaged or the number of people injured or killed does not constitute an element of the offense [hit and run]. [Rather, i]t is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense.

*Tooke*, 47 Va. App. at 765-66 (quoting *James*, 178 Va. at 37).

Ordinarily we would affirm the judgments on [one] indictmen[t] and reverse the judgment on the other, but it is impossible, from an examination of this record, to ascertain on which . . . of the . . . indictments to enter judgment and on which one to reverse it.  Under the circumstances, we reverse each [hit and run] judgment and remand the cases to the [circuit] court for [a] new tria[l] to be had in accordance with the views herein expressed.

*James*, 178 Va. at 39.  As it does not "'"plainly appea[r] from the record and the evidence given at the trial that" the error did not affect the [sentence],' we must reverse" the sentence for the reckless driving conviction as well.  *Resio v. Commonwealth*, 29 Va. App. 616, 623 (1999) (second alteration in original) (quoting *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005 (1991) (en banc)).  As such, the reckless driving conviction is remanded to the circuit court for resentencing.

## CONCLUSION

For the foregoing reasons, relating to the hit and run convictions, this Court reverses the judgment of the circuit court and remands for a new trial and resentencing.

*Reversed and remanded.*